THE MERCHANTS' NATIONAL BANK OF BALTIMORE *v.* THE FIRST NATIONAL BANK OF BALTIMORE.

*(Circuit Court, D. Maryland.* June 30, 1880.)

1. INDORSEE—STATUTE OF LIMITATIONS.—In a suit by the drawee of a bill exchange against an indorser, where such bill was drawn by the treasurer of the United States, and the name of the payee forged, the statute of limitations does not begin to run until judgment has been obtained by the United States against the drawee.

Appeal from the district court.

*Marshal & Brown,* for appellant.

*Daniel & Sterling,* for appellee.

WAITE, C. J. On the sixteenth of March, 1867, the treasurer of the United States made his draft on the First National Bank of Baltimore, a government depository, for $1,609.55, payable to the order of William Orndorff. This check, apparently indorsed by Orndorff, the payee, and one Hargert, was forwarded by the Shenandoah Valley National Bank, with its own indorsement, to the Merchants' National Bank of Baltimore for collection. On the twenty-second of March it was indorsed by the Merchants' National, and, on presentation, paid by the First National in due course of business, both parties supposing the indorsement of the name of Orndorff was genuine. When the payment was made the amount was charged in account by the First National against the United States, and the draft forwarded with the next weekly statement to the treasury for credit, which was allowed without objection. Ten years afterwards, in 1877, the United States having become satisfied that the indorsement of Orn-

dorff was forged, sued the First National Bank to recover the amount of this credit.

The Merchants' National Bank having been notified of the suit, employed counsel to assist the First National in making a defence. Upon the trial the forgery was proven, and judgment rendered against the First National for the amount claimed. The First National paid the judgment, and then brought this suit against the Merchants' National to recover what was so paid, on the ground that the latter bank, by its indorsement of the draft and receipt of the money thereon, became responsible for the genuineness of Orndorff's signature.

To this suit the Merchants' National pleaded the Maryland statute of limitations, which was three years, and the single question now presented is whether this statute began to run when the draft was paid, or when the judgment in favor of the United States against the First National was rendered. If the former the suit is barred, but if the latter it is not. The drawee of a bill of exchange, by accepting and paying the bill, admits the genuineness of the signature of the drawer, and his own obligation to pay. An indorsee who demands and receives such a payment warrants his title to the bill from the prior parties under whom he claims. The legal effect of this warrant is that the payment is actually made to the order of the payee; and, so far as the title of the indorsee is concerned, will entitle the drawee to credit with the drawer for the amount drawn for. The undertaking is not as to the genuineness of the bill itself, but the title of the holder.

In this case the First National got credit at the treasury of the United States for the amount of the draft. It was thus put in actual possession of what the Merchants' National guarantied it would be entitled to. The exchange of the funds of the United States in the hands of the depository for the bill thus became consummated, and no right of action on the warranty accrued until, at least, the United States elected to insist on the defect of title and cancel the credit.

The case of *Cowper* v. *Godmond,* 9 Bing. 788, 23 E. C. L. 452, is in principle much like this. There the question was whether a plea of the statute of limitations was a bar to an action for money had and received to recover the consideration money of a void annuity, when the annuity was granted more than six years before the action was brought, but was treated by the grantor as an existing annuity within that period. "That question," said the court, "depends upon another: at what time did the cause of action arise? The cause of action comprises two steps. The first is the original advance of the money by the grantee; the second is the grantor's election to avail himself of the defect in the memorial of the annuity. The cause of action was not complete until the last step was taken." In the present case, also, the warranty contemplated two things—*First,* the giving of the credit by the United States; and, *second,* its continuance. As the first requirement of this undertaking was complied with, no right of action could arise until the second was broken. That certainly did not occur until the United States elected to take back the credit it had given.

It is true that in *Cowper* v. *Godmond* the election to disaffirm was with the party to whom the payment was originally made, but this does not affect the principle on which the right to recover rests. The object is to get back a consideration, which has failed, and in such cases it is evident there can be no cause of action until the failure is complete. In *Cowper* v. *Godmond* the payment was for the annuity, and the failure did not occur until the grantor of the annuity disaffirmed his grant. Here the consideration was paid to get a credit with the United States, and the failure was not complete until the credit which had once been given was withdrawn.

This disposes of the case, as it is conceded the action was begun within three years after the United States gave notice of its election to withdraw the credit. The liability of the First National to account for the amount erroneously credited was established by the judgment in favor of the United

States, and, as the Merchants' National was notified of the pendency of that suit and took part in the defence, it must abide by the result.

The judgment of the district court is affirmed.